OPINION OF THE COURT
Francesca E. Connolly, J.
This matter is a proceeding pursuant to Election Law § 16-102 to invalidate a petition designating Ivy Reeves as a candidate in a primary election to be held on September 10, 2013, for the nomination of the Democratic Party as its candidate for the public office of City Council President of the City of Yonkers. For the reasons set forth below, the court finds that the petitioners’ failure to timely serve Reeves in strict compliance with the method of service specified in the order to show cause necessitates dismissal of the proceeding.
Factual and Procedural Background
The Designating Petition
The respondent candidate Ivy Reeves filed a designating petition with the Westchester County Board of Elections, seeking to be placed on the ballot in the primary election to determine the Democratic Party’s candidate for the office of Yonkers City Council President.
The Order to Show Cause and Verified Petition
The petitioners commenced this proceeding by the filing of an order to show cause and verified petition alleging fraud and raising specific objections to signatures on the designating petition. The order to show cause was submitted to and signed by this court on July 22, 2013.[1] The order specified that the return date for the proceeding was July 25, 2013. The second page of the order to show cause contains a “Schedule of Respondents,” *256 listing Reeves and the Board. The schedule also lists, “for identification purposes only,” the individual members of the Committee to Fill Vacancies.
The order to show cause specified that “service of this Order and the papers upon which it is granted” was to be accomplished by delivering “a true copy of this Order and the annexed papers,” in person to the Board, and upon “each of the remaining respondents,” in the alternative, by:
“Enclosing the same in a securely sealed and duly post-paid wrapper addressed to the Respondent at the address(es) as set forth in the within Schedule of Respondents, and by sending the same by overnight, next-day delivery by UPS, FEDEX or the U.S. Postal Service on or before the 22nd day of July, 2013.” (Emphasis added.)
The First Court Appearance
On July 25, 2013, the original return date for this proceeding, the petitioners’ attorney appeared and filed three affirmations of service, one affirmation relating to his service upon the Board and two affirmations relating to his service upon Reeves. Reeves appeared through an attorney and the Board appeared through the County Attorney’s office. At the calendar call, the Board reported that no determination had yet been made on the petitioners’ objections.
A conference was held where the issue of service of the order to show cause was discussed. While the petitioners’ attorney maintained that service upon the respondents was made in accordance with the order to show cause, he alerted the court to issues that arose in his efforts to effectuate service upon Reeves. He explained that he originally attempted to serve Reeves by “Overnight Express Mail” at a post office in Manhattan, at 4:47 p.m., on July 22, 2013. However, sometime later that evening, he became aware that the set of papers mailed to Reeves was likely incomplete, and he was uncertain as to whether he had mailed her a complete copy of the order to show cause and verified petition. Thus, he explained, later that night at about 9:30 p.m., he attempted service in the same manner, by sending a complete set of the papers by “Overnight Express Mail,” from a post office in Yonkers.
Both affirmations of service attached an “Express Mail” customer online record. The affirmation of service relating to the first attempt to serve Reeves included a United States Postal Service (USPS) printout confirming that the first mailing (which *257 the petitioners’ attorney believes may not have included a full set of the papers) was received by Reeves at 4:23 p.m. on July 23, 2013 (the following day). The affirmation of service relating to the second attempt at service did not include any delivery information.
The attorney for Reeves raised personal jurisdiction defenses and refused to accept service of a complete set of the papers in the courtroom. The attorney indicated that Reeves had only received one mailing from the petitioners, which contained an incomplete set of the papers.
The proceeding was adjourned to August 1, 2013 to give the Board the opportunity to complete its review and make a determination on the petitioners’ objections.
Reeves’ Motion to Dismiss
On August 1, 2013, Reeves appeared with counsel and filed a motion to dismiss the proceeding on the ground that she was not served in accordance with the order to show cause, which permitted service by “overnight, next-day delivery by UPS, FEDEX or the U.S. Postal Service on or before the 22nd day of July, 2013.” Reeves further moved to dismiss the proceeding on the ground that the petitioners failed to serve any of the members of the Committee to Fill Vacancies. In the alternative, Reeves moved to dismiss the allegations of fraud contained in the petition on the ground that they were not pleaded with particularity.
In support of her motion, Reeves submitted two affidavits attesting to the fact that she was not served with a complete copy of the order to show cause and supporting papers until July 24th, one day late, along with documentation from the postal service indicating that the mail was sent with a second-day delivery. She also submitted affidavits from the five members of the Committee to Fill Vacancies attesting to the fact that they were not served with any of the papers in the case. In her affidavits, Reeves averred that the first mailing she received, on July 23, 2013, contained the “order to show cause signed by the court, the RJI and a bound copy of the order to show cause. The bound copy did not contain the petition or any supporting affidavits” (emphasis added). Further, Reeves averred that she received a card from the post office indicating that a second package had been attempted to be delivered. In supplemental briefing, Reeves argued that, pursuant to federal law, express mail must be presented to the post office “by the times authorized by the post master,” in order to qualify for next day *258 delivery. Express mail packages received by the post office after the time authorized by the postmaster “are accepted for delivery on the second day.” Reeves also argued that CPLR 2103 (b) (6) describes what is meant by overnight mail. Finally, she argues that the petitioners’ failure to waive the signature requirement on the mailing is a further act of noncompliance with the order to show cause.
In opposition, the petitioners submitted a memorandum of law, in which the petitioners’ attorney affirmed and argued that he complied with the method of service prescribed by the order to show cause by serving Reeves by overnight mail and therefore, the court had jurisdiction to proceed. He also argued that he was not required to serve the Committee to Fill Vacancies, as it is not a necessary party. In a supplemental brief, the petitioners argued that, as their expert witness would testify, delivery to the Yonkers post office on July 22, 2013, “brought the certainty that, under post office policy, attempted service would be guaranteed on [July] 23.” The petitioners argued that CPLR 2013 (b) (6) is inapplicable to this case, and that even if the court finds that it is applicable, its expert would establish that there is no cutoff for express mail, “where such mail is deposited at the Yonkers post office the night before such a mailing is due to be received.”
The Board took no position on the motion.
The court reserved decision on the branches of Reeves’ motion, which sought to dismiss the petition for failure to effectuate service in accordance with the order to show cause, and directed the parties to proceed to the merits of the invalidating proceeding, without waiving any objections with respect to jurisdiction.
The Board of Elections’ Determination
After ruling on specific objections filed by citizen objectors, the Board determined on August 1, 2013 that Reeves had 1,041 valid signatures, 41 more than the 1,000 necessary for her name to be placed on the ballot.
The Traverse Hearing
On August 2, 2013, a traverse hearing was conducted, at which time the petitioners’ attorney testified as to the manner in which he served Reeves to comply with the order to show cause. The petitioners’ attorney testified that he originally attempted to serve Reeves by “Overnight Express Mail” at the post office at 99 Church Street, New York, NY, at 4:47 p.m., on *259 July 22, 2013. He testified that, in mailing the first envelope, he delivered it to a postal clerk at the service counter of the post office. However, sometime later that evening, he became aware that the set of papers mailed to Reeves was likely incomplete, and he was uncertain as to whether he had mailed her a complete copy of the order to show cause and verified petition. To comply with the order, he then prepared a complete set of papers and placed them in a prepaid overnight mail envelope addressed to Reeves at her address. At about 9:30 p.m., petitioners’ attorney went to a post office in Yonkers to attempt service on Reeves by overnight mail. When he arrived there, the post office was closed, but he was able to enter the vestibule by swiping his credit card to open the front door. While he initially could not recall the mail slot into which he placed the letter, he later confirmed that he placed it in a slot marked “All Mail Drop Here.” He also introduced a number of photographs of the “Yonkers East” post office into evidence, including a photograph of the mail slot into which he placed the letter (see petitioners’ exhibit 7-C [in evidence]).[2]
On August 5, 2013, the petitioners called Michael Annunziato, a retired post office employee, as an expert witness. Annunziato worked for the post office from 1971 to 2003, and spent the last 20 years of his employment delivering express mail. Reeves objected to the petitioners’ proffer of Annunziato as an expert witness on the ground that he had not worked for the post office for 10 years. The court overruled the objection, with the caveat that the length of time since he last worked for the post office would be considered when weighing his testimony. Annunziato testified that express mail is a guaranteed overnight delivery service, and is delivered the next day 99% of the time. By contrast, priority mail is a two-day delivery service. Annunziato was questioned as to how a prepaid express mail envelope addressed to a Yonkers destination, mailed from the Yonkers East branch, located at 915 Yonkers Avenue, at 9:30 p.m., would have been processed by the post office. Annunziato testified that, based upon his experience while he was still working for the post office, the following morning, at 7:00 or 7:30 a.m., the postal clerks would remove the express mail letter from the bin *260 and scan it into the system, and, since the letter was destined for a Yonkers address, it would be placed on a truck for delivery that day before 12:00 noon.
On cross-examination, Annunziato admitted that he had not worked for the post office in 10 years, and his knowledge regarding current procedures was based on informal conversations with employees who still work there. Annunziato was confronted with a USPS.com “Track & Confirm” printout for the mailing sent by the petitioners from Yonkers (see Reeves’ exhibit C [in evidence]). The track and confirm printout indicates that the post office received the “Electronic Shipping Info” for the package on July 22, 2013. The next chronological entry on the printout indicates the package’s “Acceptance” on July 23, 2013, at 12:30 p.m., in Yonkers, NY 10704. The package was “Dispatched to Sort Facility” at 6:30 p.m. The package was “Processed through USPS Sort Facility” in White Plains at 10:52 p.m. The package was returned to the Yonkers post office at 7:43 a.m., on the morning of July 24, 2013, and was “Out for Delivery” at 9:02 a.m. On July 24, 2013, at 1:22 p.m., the printout indicates “Notice Left (No Authorized Recipient Available).” Finally, the printout indicates that the package was “Delivered” on July 25, 2013, at 1:04 p.m. When questioned about this printout, Annunziato could not explain why the package was routed through a White Plains sorting facility, rather than being immediately placed on a truck for delivery.
At the conclusion of the hearing, the petitioners also offered into evidence the United States Government Accountability Office, Report to Congressional Requesters, U.S. Postal Service: Delivery Performance Standards, Measurement, and Reporting Need Improvement (GAO-06-733, July 2006) (Petitioners’ exhibit 9 [hereinafter GAO Report]), noting that the Court in Matter of Henry v Trotto (54 AD3d 424 [2d Dept 2008]) had considered that report. Although the report is over seven years old, it states, among other things, that next-day service for express mail is based on “the time of acceptance” (GAO Report at 61).
Reeves asked the court to also consider the Domestic Mail Manual (DMM), which is a publication of the United States Postal Service incorporated by reference into 39 CFR 111.1. The DMM states, in relevant part:
“Priority Mail Express Next Day Delivery items must be presented no later than the times authorized by the postmaster. Priority Mail Express Next *261 Day Delivery items mailed after the time authorized by the postmaster are accepted for delivery on the second day after mailing, subject to the standards for this service.” (DMM 113-4.2.3 [emphasis added], available at http://pe.usps.com/text/dmm300/ llS.htm#1009504 [accessed Aug. 5, 2013].)
The Merits of the Invalidating Proceeding
During testimony relating to the fraud allegations, Reeves admitted that she had mistakenly signed as a subscribing witness to one sheet of the designating petition that contained some signatures she did not witness. Reeves conceded that all seven signatures on this sheet should be stricken. Since the Board had already ruled three of the signatures on that sheet invalid based upon specific objections, the parties agreed that Reeves’ total number of signatures should be reduced by four as a result of this concession.
During a line-by-line examination of the designating petition sheets, Reeves agreed that 38 signatures on her designating petition should be invalidated on the ground that the signer had previously signed the designating petition of a different candidate in the same race.
With Reeves’ concession that a total of 42 signatures should be invalidated, resulting in 999 valid signatures, one signature short of the 1,000 signatures necessary, the court stopped the line-by-line review.
Since it was undisputed that Reeves’ designating petition lacked the requisite number of signatures, the fraud issues became moot.
Discussion/Analysis
Election Law proceedings, such as the instant case, often raise two related but distinct issues with respect to personal jurisdiction: (1) whether the method of service prescribed in the order to show cause was reasonably calculated to give notice to the necessary parties within the statutory time period, and (2) whether the method of service specified in the order to show cause was strictly complied with. The latter is the determinative issue in this proceeding. Since the court finds that the petitioners did not timely serve Reeves in “strict compliance” with the method of service prescribed by the order to show cause, for the reasons discussed herein, the proceeding is dismissed.
A proceeding to invalidate a designating petition pursuant to Election Law § 16-102 must be instituted within 14 days after *262 the last day to file such designating petition (see Election Law § 16-102 [2]; Matter of Henry v Trotto, 54 AD3d 424, 425 [2d Dept 2008]). “A petitioner raising a challenge under Election Law § 16-102 must commence the proceeding and complete service on all the necessary parties within the period prescribed by Election Law § 16-102 (2)” (Matter of Wilson v Garfinkle, 5 AD3d 409, 410 [2d Dept 2004]; see Matter of Green v Mahr, 230 AD2d 873 [2d Dept 1996]).
“In order to acquire personal jurisdiction, the method of service directed in the order to show cause must be reasonably calculated to give notice to the necessary parties within the statutory time period” (Matter of Henry v Trotto, 54 AD3d 424, 425 [2d Dept 2008]). Here, the order to show cause specified that service was to be completed by “overnight, next-day delivery by UPS, FEDEX or the U.S. Postal Service on or before the 22nd day of July, 2013.” The last day to commence an invalidating proceeding under the Election Law was July 25, 2013. Since this method of service was reasonably calculated to give notice within the statutory period, the order to show cause in this case satisfied that test. It is noted that, in the event an order to show cause were to specify a method of service which was not reasonably calculated to give notice within the statutory time period (i.e., it permitted service by a method calculated to arrive at a later date), the Court of Appeals has permitted a petitioner to demonstrate that service was in fact made within the statutory time period (see Matter of Contessa v McCarthy, 40 NY2d 890, 891 [1976]). However, since the method of service in this case was reasonably calculated to arrive within the statutory period, it is unnecessary “to determine whether actual receipt had in fact been timely” (id.).
However, the dispositive issue in this case is not the method of service specified by the order to show cause, but timely compliance with that method of service. “The method of service provided for in an order to show cause is jurisdictional in nature and must be strictly complied with” (Matter of Hennessey v DiCarlo, 21 AD3d 505, 505 [2d Dept 2005] [emphasis added]; see Matter of Kiernan v New York State Bd. of Elections, 95 AD3d 1242, 1243 [2d Dept 2012] [“Since strict compliance with the service provisions of the order to show cause is jurisdictional in nature, the Supreme Court here did not have jurisdiction to entertain the proceeding”]; Matter of O’Daniel v Hayduk, 59 AD2d 706 [2d Dept 1977], affd 42 NY2d 1062 [1977]).
Critically, deciding whether the order to show cause was strictly complied with concerns neither whether the respondent *263 actually received notice within the statutory time period, nor whether the type of service was one reasonably calculated to arrive within that time period (see Matter of Bruno v Ackerson, 51 AD2d 1051, 1051 [2d Dept 1976] [“While it can be argued that the latter method of service utilized by petitioner was a better mode of service, the mode of service provided for in the order to show cause was jurisdictional in nature, and must be complied with” (citation omitted)], affd 39 NY2d 718 [1976]).
Thus, with the understanding that “strict compliance” with the method of service is the applicable standard, the court turns to the issue of whether the petitioners strictly complied with the requirement that Reeves be served by sending the papers “overnight, next-day delivery by UPS, FEDEX or the U.S. Postal Service on or before the 22nd day of July, 2013.”
CPLR 2103, entitled “Service of Papers,” provides, in relevant part: “Service by overnight delivery service shall be complete upon deposit of the paper enclosed in a properly addressed wrapper into the custody of the overnight delivery service for overnight delivery, prior to the latest time designated by the overnight delivery service for overnight delivery” (CPLR 2103 [b] [6] [emphasis added]). Further, “ ‘[o]vernight delivery service’ means any delivery service which regularly accepts items for overnight delivery to any address in the state” (CPLR 2103 [b] [6]). Although CPLR 2103 (b) (6) applies to service on attorneys, this section is made applicable to service on parties as well by CPLR 2103 (c).
While the method of service prescribed in the order to show cause does not specifically reference CPLR 2103, these provisions are instructive in defining the methodology of “overnight mail.” Indeed, the provisions of CPLR 2103 relating to the service of papers have been found by other courts to apply to service in Election Law proceedings (see Matter of Sloan v Knapp, 10 AD3d 434 [2d Dept 2004] [validating proceeding dismissed where “(s)ervice was improperly made by the petitioner himself upon the respondents,” in violation of CPLR 2103 (a)]; Matter of Hawkins v Szczesniak, 309 AD2d 1307 [4th Dept 2003]; Matter of Wein v Thomas, 78 AD2d 611 [1st Dept 1980], affd 51 NY2d 862 [1980]).
In determining whether petitioners strictly complied with the “overnight mail” service provision of the order to show cause, the court must reference CPLR 2103 (b) (6) to determine whether petitioners’ attorney delivered the papers into the custody of the post office “for overnight delivery, prior to the *264 latest time designated by the overnight delivery service for overnight delivery.” The petitioners bore the burden to establish this fact at the traverse hearing (see Rowlan v Brooklyn Jewish Hosp., 100 AD2d 844 [2d Dept 1984]).
Here, the court is satisfied that by utilizing “Express Mail,” the petitioners utilized an overnight delivery service (see Thomas F. Gleason, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C:2103:3 at 460 [“Express Mail (not Priority Mail) is a form of overnight delivery by the US Postal Service, rather than mail”]).
However, the petitioners have failed to establish that placing a prepaid express mail envelope in a designated slot for “All Mail,” at the post office, at the late hour of 9:30 p.m., after the service counter was closed, will result in “overnight, next-day delivery” of that package, which was required by the order to show cause (see Matter of Stabile v DeFronzo, 231 AD2d 577, 577 [2d Dept 1996] [dismissing proceeding where petitioners served petition by use of “Express Mail,” delivered to the post office at 11:55 p.m., “with instructions for second day delivery,” the day before the last day to commence]; cf. Matter of Littlewort v Board of Elections in City of N.Y., 87 AD3d 642, 643 [2d Dept 2011] [petitioners complied with the order to show cause, “which permitted service, among other means, ‘by guaranteed express overnight delivery mail,’ placed in the mail on or before August 4, 2011,” where they showed, among other things, that the mailings were “date-stamped by the United States Postal Service on August 4, 2011”]; Matter of Nunziato v Messano, 87 AD3d 647 [2d Dept 2011]).
Notably, the petitioners’ only evidence that such mail would be designated for overnight delivery was from a witness who had not worked in the Yonkers post office in 10 years, and who could offer nothing more than conjecture as to the procedures currently in place for the delivery of express mail. Moreover, any claim by the petitioners that the postal procedures in place 10 years ago bear relevance on this proceeding is greatly undercut by the “Track & Confirm” printout introduced into evidence by Reeves, which indicates that the package was rerouted to White Plains before eventually being sent out for delivery, two days after it was placed in the mail (see Reeves’ exhibit C).
The case at bar does not present a scenario where delivery was delayed by circumstances outside of the petitioners’ control, such that noncompliance can be excused (cf. Matter of Wager v *265 New York State Bd. of Elections, 59 AD2d 729, 730 [2d Dept 1977] [where respondent could not pick up the papers until after statutory period because the post office was closed, the delayed delivery was excused because the “situation was beyond the control of petitioner”]).
Moreover, if courts were to permit service by overnight mail at a time later than “the latest time designated by the overnight delivery service for overnight delivery” (CPLR 2103 [b] [6]), then any order to show cause permitting delivery by overnight mail on the next-to-last day to commence a proceeding pursuant to Election Law § 16-102 would, in effect, be permitting service by a method not reasonably calculated to arrive on the last day of the statutory period. While there were several days before the end of the statutory period in the case at bar, this court must consider the consequences of its ruling.
Nor can the petitioners rely on the first mailing of the incomplete set of papers, which did in fact arrive at Reeves’ home on the day following the mailing, to establish service in accordance with the order to show cause. Service of only an order to show cause, without annexing the underlying papers, does not constitute valid service (see Matter of Thomas v Selsky, 34 AD3d 904, 904 [3d Dept 2006] [dismissing proceeding where petitioner “served only the order to show cause, without any other documentation, upon respondent”]; Matter of Gittens v Selsky, 193 AD2d 986, 987 [3d Dept 1993]).
The petitioners cite to Matter of De Santis v Pedone (61 AD2d 1136, 1136 [4th Dept 1978], affd 45 NY2d 799 [1978]), where the Fourth Department held: “Although the order to show cause initiating the proceeding served on appellant was not accompanied by the petition, the order clearly informed appellant that the results of the election were being challenged and gave him notice of the relief that was being requested.” While De Santis would appear to be directly on point, the petitioners fail to note that the Fourth Department also held in the same case: “Even if the service of the order to show cause on appellant were found to be defective, appellant’s appearance and argument before Special Term on the return day of the order constituted waiver of his jurisdictional objections” (id. [emphasis added]). Thus, since there was a waiver of any defect in service, the Fourth Department’s holding with regard to serving an order to show cause without the supporting papers was arguably dicta.
Furthermore, the failure to include the petition in the first mailing was yet another failure of the petitioners to strictly *266 comply with the order to show cause, which directed that they serve “a true copy of this Order and the annexed papers” (emphasis added), on each of the respondents (see Matter of Kiernan v New York State Bd. of Elections, 95 AD3d 1242 [2012]; Matter of Hennessey v DiCarlo, 21 AD3d at 505).
Importantly, the petition in this case alleged that the respondent candidate committed fraud, a serious and potentially reputation-damaging accusation, and the order to show cause did not even mention the allegation of fraud. Thus, permitting service of only the order to show cause would have prejudiced her ability to prepare a defense as to those allegations. A respondent candidate should not be haled into court on the return date of an expedited proceeding, only to learn for the first time that he or she has been accused of committing fraud.
Lastly, the petitioners’ failure to serve the members of the Committee to Fill Vacancies does not necessitate dismissal, as members of the Committee to Fill Vacancies are not necessary parties to this proceeding (see Matter of Tinari v Berger, 196 AD2d 622, 623 [2d Dept 1993]).
The petitioners’ failure to establish that service was timely effectuated on Reeves in the manner specified in the order to show cause constitutes a jurisdictional defect and accordingly, the invalidating proceeding is dismissed.
Based upon the foregoing, it is hereby ordered, that the branch of Ivy Reeves’ motion, which is to dismiss the proceeding on the ground of lack of personal jurisdiction, is granted; and it is further ordered, that the proceeding is dismissed; and it is further, ordered, that all other relief requested and not decided herein is denied.

. For the sake of providing an accurate timeline, the court notes that the petitioners preemptively commenced this proceeding, as the Board of Elections did not render its determination on Reeves’ designating petition until August 1, 2013.

. Petitioners’ exhibit 7-C depicts the “All Mail” drop slot into which the petitioners’ attorney placed the envelope. Below the slot is a sign that states “Collection Times.” Because the photo is not entirely clear, the court is unable to discern the collection time designated on this sign, which might have been relevant to the dispositive issue in this case.